Steven Sugarman
New Mexico Bar No. 5717
1210 Luisa Street – Suite 2
Santa Fe, New Mexico 87505
(505) 672-5082
stevensugarman@hotmail.com

Attorney for WildEarth Guardians
and Western Watersheds Project

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| WILDEARTH GUARDIANS and<br>WESTERN WATERSHEDS PROJECT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. CIV  _____ |
| vs. | ) | |
| | ) | |
| KEN SALAZAR, in his official capacity as | ) | **COMPLAINT FOR** |
| Secretary, United States Department of | ) | **DECLARATORY AND** |
| the Interior | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. **Preliminary Statement**

1.      The desert tortoises (*Gopherus agassizii*) are truly remarkable animals that have

evolved to survive in some of the harshest natural environments on the Earth's surface –

the deserts of the American southwest.

Complaint - Page 1

2.      Desert tortoises have unique behavioral and physiological adaptations that have helped secure their survival in the harsh conditions of the Mojave and Sonoran deserts. For example, desert tortoises survive the extreme annual and diurnal temperature fluctuations of the deserts by spending 95% or more of their lives inside coversites and burrows which provide a cooler microclimate when the weather is hot and that, conversely, provide shelter from freezing temperatures during the winter.  They are herbivorous and eat a variety of plant matter as it becomes seasonally available including fresh spring and summer annuals, dried annuals, and grasses.  Desert tortoises have evolved an ability to digest many species of plants that are indigestible to other animals with the help of bacteria that reside in their digestive systems.  As yet another example of their adaptations, desert tortoises have adapted to the extreme aridity of the southwestern deserts by developing a high tolerance for dehydration, and have been known to go over a year without drinking any water at all.

3.      Sadly, and ominously insofar as the continued survival of the desert tortoise is concerned, one thing that the tortoise has not evolved to do is to co-exist with human activities and development.  There is ample evidence that livestock grazing, urbanization, mining, off-road vehicle use, and other human-caused disturbances to the tortoise's natural habitat threatens the continued survival of desert tortoises as a species throughout their range.

4.      This case deals with desert tortoises found south and east of the Colorado River –

Complaint - Page 2

the Sonoran population of desert tortoises which find their natural habitat range in the

Sonoran Desert and the Black Mountains population of desert tortoises found north of

Kingman, Arizona. south and east of the Colorado River.  While the Mojave population

of desert tortoises (which inhabit the Mojave Desert to the north and west of the Colorado

River) received the protections of the Endangered Species Act ("ESA") when it was listed

as a threatened species in April of 1990, the Sonoran population has not been accorded

that same protection.

5.       Since 1987, monitored populations of Sonoran desert tortoise adults and sub-

adults have declined by 51%, largely as a result of the anthropogenic causes discussed

above.

6.       In an effort to reverse this trend towards extinction, and in an effort to secure the

protections of the ESA for the Sonoran population of desert tortoises, Plaintiffs WildEarth

Guardians and Western Watersheds Project (collectively "WildEarth Guardians") bring

this action against Defendant Ken Salazar, Secretary of the United States Department of

the Interior to compel him to carry out his non-discretionary duties under Section 4 of the

ESA.[1]  16 U.S.C. §1533.

7.       The Secretary has failed to comply with his mandatory duty under ESA Section

---

[1]

        Throughout this Complaint, Defendant Salazar will be referred to as the
"Secretary," or alternatively, the United States Fish and Wildlife Service ("FWS"), the
agency to which the Secretary has delegated his ESA Section 4 responsibilities in the case
of the desert tortoise.

4 to make a "12-month finding" on WildEarth Guardians' Petition to list the Sonoran

desert tortoise as an endangered or threatened species under the ESA and to designate its

critical habitat.  This lawsuit seeks to force the Secretary to make the overdue finding on

Guardians' Petition.

## II.  **Jurisdiction and venue**

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal

question) and 16 U.S.C. §§1540(c), (g) (action arising under the ESA and citizen suit

provision).

9.      This Court has authority to grant WildEarth Guardians' requested relief pursuant

to the Declaratory Judgment Act, 28 U.S.C. §§2201-02, and the Administrative Procedure

Act, 5 U.S.C. §§701-706 ("APA").

10.     More than 60 days ago, WildEarth Guardians furnished FWS with written notice

of its violation of the ESA Section 4 and of WildEarth Guardians' intent to commence a

lawsuit seeking redress for that violation.  16 U.S.C. §1540(g)(2).

11.     FWS has not remedied its violation of ESA Section 4 by making the overdue

finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise as endangered

or threatened.  Therefore an actual controversy exists between the parties within the

meaning of the Declaratory Judgment Act.  28 U.S.C. §2001.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) and 16 U.S.C.

§1540(g)(3)(A) because a significant part of the acts and omissions giving rise to

WildEarth Guardians' cause of action occurred in this judicial district.  Furthermore,

FWS's Regional Office for the southwestern United States, directly responsible for

making the finding on WildEarth Guardians' Petition, is located in this district.

### III. **Parties**

13.     Plaintiff WILDEARTH GUARDIANS sues on behalf of itself and its adversely

affected members.  WildEarth Guardians is a non-profit environmental organization with

4,500 members nation-wide.  Of these members, many recreate in the Sonoran desert

habitat of the Sonoran desert tortoise.  WildEarth Guardians' mission is to protect and

restore wildlife, wild places, and wild rivers in the American West.  WildEarth Guardians

has an active endangered species protection campaign.  As part of this campaign,

WildEarth Guardians has repeatedly urged FWS to list, and thereby protect, imperiled

species like the Sonoran desert tortoise as threatened or endangered species under the

ESA.  WildEarth Guardians filed its Petition to list the Sonoran desert tortoise on October

9, 2008.  WildEarth Guardians spent significant time and resources preparing its Petition

and filed a lawsuit in this Court – since settled – to compel the FWS to render a

preliminary "90-day finding" on the Petition.  WildEarth Guardians is injured by the

FWS's failure to make mandatory decisions concerning its Petition to list the Sonoran

desert tortoise within the time frames allotted by Congress in the ESA.  Members of

WildEarth Guardians frequently use and enjoy the Sonoran desert tortoise and its habitat

for wildlife viewing, recreational, aesthetic, and scientific activities and will continue to

do so.  WildEarth Guardians and its members are particularly concerned about the continued survival of the Sonoran desert tortoise and the ecosystem on which it depends for its survival.  WildEarth Guardians and its members have a substantial interest in this matter and are adversely affected by the Secretary's failure to comply with ESA Section 4 in connection with the Sonoran desert tortoise.  The relief requested in this Complaint will redress WildEarth Guardians' and its members' injuries.

14.     Plaintiff WESTERN WATERSHEDS PROJECT ("WWP") is a regional conservation organization with offices in Arizona, California, Idaho, Montana, Utah, and Wyoming.  WWP's mission is to protect and restore western watersheds and wildlife habitats through education, scientific study, public policy initiatives, and litigation. Through agency proceedings, public education, scientific studies, and legal advocacy conducted by its staff, members, volunteers, and supporters, WWP is actively engaged in protecting and improving plant and animal communities and other natural resources and ecological values.  WWP co-filed the petition to list the Sonoran Desert Tortoise in October 2008. WWP invested substantial organizational resources in preparing this petition.  WWP members and staff frequently use and enjoy, and will continue to use and enjoy, the Sonoran Desert Tortoise and its habitat for plant and wildlife viewing and for recreational, aesthetic, and scientific activities.  WWP and its members are particularly concerned with the conservation of desert tortoises and the ecosystems on which they depend for their survival.  WWP and its members have a substantial interest in this matter

and are adversely affected by the Secretary's failure to comply with the ESA.  The

requested relief will redress the injuries of WWP and its members.

15.     Defendant, KEN SALAZAR, is the Secretary of the United States Department of

the Interior.  He has ultimate responsibility for implementation of the ESA.  He is sued in

his official capacity.  In this case, the Secretary has delegated his responsibilities to the

U.S. Fish and Wildlife Service ("FWS"), an agency within the U.S. Department of the

Interior.

## IV.  **Legal requirements of the ESA**

16.     In drafting the ESA, Congress found that "various species of fish, wildlife, and

plants in the United States have been rendered extinct as a consequence of economic

growth and development untempered by adequate concern and conservation," and that

"other species of fish, wildlife, and plants have been so depleted in numbers that they are

in danger of or threatened with extinction."  16 U.S.C. §§1531(a)(1), (2).  Accordingly,

Congress passed the ESA to "provide a means whereby the ecosystems upon which

endangered species and threatened species depend may be conserved, [and] to provide a

program for the conservation of such endangered species and threatened species…."  16

U.S.C. §1531(b).

17.     To this end, Section 4 of the ESA requires FWS to list species of plants and

animals that are facing extinction as "threatened" or "endangered" and to designate

protected "critical habitat" for each listed threatened or endangered species.  16 U.S.C.

Complaint - Page 7

§1533(a).  An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range…."  16 U.S.C. §1532(6).  A "threatened species" is a species "which is likely to become an endangered species within the foreseeable future…."  16 U.S.C. §1532(20).

18.     In order for the ESA to protect a species, FWS must first officially list the species as either threatened or endangered.  16 U.S.C. §1533(a).  The listing process is the critical first step in the ESA's system of species protection and recovery.  FWS must also designate the species' habitat as "critical habitat" for it to receive several important ESA protections.

19.     Any interested person can initiate the listing process by filing a petition to list a species with FWS.  16 U.S.C. §1533(b)(3)(A); 50 C.F.R. §424.14(a).

20.     Upon receipt of a petition to list a species, FWS is required to make an initial finding known as a "90-day finding."  Specifically, within 90 days of receipt, "to the maximum extent practicable" FWS must determine whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. §1533(b)(3)(A).  FWS's implementing regulations define "substantial information" as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted."  50 C.F.R. §424.14(b).

Complaint - Page 8

21.     If FWS finds that the petition presents substantial information (a "positive 90-day finding"), FWS must publish its finding in the Federal Register and "shall promptly commence a review of the status of the species concerned."  16 U.S.C. §1533(b)(3)(A).

22.     In the case of a positive 90-day finding, FWS must make one of three findings within twelve months of its receipt of a listing petition: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by other pending proposals to list species of higher priority, provided that FWS is making expeditious progress in listing other species.  16 U.S.C. §1533(b)(3)(B); 50 C.F.R. §424.14(b)(3).

23.     This second finding is known as a "12-month finding," and the Ninth Circuit Court of Appeals has determined that the FWS does not have the discretion to extend the deadline for the "12-month finding" beyond the twelve month period from the date of petition receipt expressly allotted by Section 4.  Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166 (9th Cir. 2002), Oregon Natural Resources Council v. Kantor, 99 F.3d 334 (9th Cir. 1996).

24.     If FWS makes a 12-month finding that the petitioned action is warranted, then it must publish a proposed rule to list the species as endangered or threatened in the Federal Register.  16 U.S.C. §1533(b)(5).

25.      Within one year of the publication of a proposed rule to list a species, FWS must make a final decision on the proposal, or extend the deadline by up to six months in cases of scientific uncertainty.  16 U.S.C. §1533(b)(6)(A).

26.      "Concurrently" with listing a species as threatened or endangered, FWS must designate critical habitat for the species to the maximum extent prudent and determinable. 16 U.S.C. §1533(a)(3)(A)(i), §1533(b)(6)(C).

## V. **Essential Facts**

27.      As described above, the Sonoran desert tortoise inhabits Sonoran desert habitats to the south and to the east of the Colorado River.  In a Federal Register publication of August 28, 2009, FWS found that the Sonoran population of desert tortoises may be a distinct population segment of desert tortoises and that survival of the Sonoran population is important to the taxon of desert tortoises as a whole.  Consequently, the FWS determined that the Sonoran desert tortoise may be a "listable" species under ESA Section 4.

28.      In an effort to protect both the Sonoran desert tortoise and the desert habitat upon which it relies for continued survival, WildEarth Guardians petitioned FWS to list the Sonoran desert tortoise as a threatened or endangered species under the ESA on October 9, 2008.  WildEarth Guardians' Petition also requested the designation of critical habitat for the tortoise.  FWS received WildEarth Guardians' Petition to list the Sonoran desert tortoise on October 15, 2008.

Complaint - Page 10

29.     FWS failed to make a 90-day finding on WildEarth Guardians' Petition within

the 90 days allotted by ESA Section 4.  After more than seven months had elapsed since

the submission of WildEarth Guardians' Petition to list the Sonoran desert tortoise

without FWS making the required 90-day finding, WildEarth Guardians filed suit on June

1, 2009 to compel the FWS to make the required 90-day finding.  <u>WildEarth Guardians v.</u>

<u>Kempthorne</u>, Civil No. 09-1166-PHX-FJM (D.Ariz.).

30.     On August 19, 2009, WildEarth Guardians and FWS entered into a Stipulated

Settlement Agreement that obligated the FWS to make the required 90-day finding by

August 27, 2009.

31.     On August 28, 2009, more than ten months after it had received WildEarth

Guardians' Petition, FWS finally published a 90-day finding concerning the Sonoran

desert tortoise.  74 Fed.Reg. 44335.   In its 90-day finding, FWS concluded that

WildEarth Guardians' Petition to list the Sonoran desert tortoise as endangered or

threatened and to designate critical habitat for the tortoise presented substantial scientific

and commercial information indicating that the listing of the species might be warranted.

32.     Specifically, FWS found that listing the Sonoran desert tortoise may be

warranted due to the present or threatened destruction, modification, or curtailment of its

habitat or range caused by human-related activities such as  livestock grazing,

urbanization and development, mining, off-road vehicle use, explosive population growth

in Arizona, agricultural development, collecting for food and for commercial trade, and

vandalism, and altered fire regimes.[2]  74 Fed.Reg. 44340-44.  The FWS determined that drought and climate change are also causative factors in the decline of Sonoran desert tortoise populations.

33.      As a result of FWS's positive 90-day finding, the FWS was required to render its 12-month finding on the Petition twelve months from the date it received the Petition.  16 U.S.C. §1533(b)(3)(B); 50 C.F.R. §424.14(b)(3).  FWS received WildEarth Guardians' Petition on October 15, 2008.  Accordingly, FWS was required by ESA Section 4 to have made its 12-month finding by October 15, 2009.

34.      As of the filing of this Complaint, FWS has failed to make the required 12-month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise within the time allotted by ESA Section 4.

35.      On October 23, 2009, WildEarth Guardians provided FWS with written notice of its intent to sue the FWS for its failure to make a timely 12-month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise and to designate critical habitat for the tortoise.  By letter dated November 2, 2009, FWS acknowledged that it received WildEarth Guardians' notice of intent to sue on August 31, 2009.

---

[2]

      FWS also found that the Sonoran desert tortoise – like the Mojave population of desert tortoises – may also be threatened by upper respiratory tract disease and a shell disease known as cutaneous dyskeratosis.

VI.  **Cause of action**

36.      Each and every allegation set forth in this Complaint is incorporated herein by reference.

37.      FWS has failed to make a 12-month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise (*Gopherus agassizii*) and has failed to publish such finding in the Federal Register.

38.      FWS has violated its mandatory duty under Section 4 of the ESA by failing to make a 12-month finding for the Sonoran desert tortoise (*Gopherus agassizii*) within 12 months of receiving WildEarth Guardians' Petition.  16 U.S.C. § 1533(b)(3)(B).

39.      By failing to render a 12-month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise (*Gopherus agassizii*), FWS has acted contrary to law and has unreasonably delayed and unlawfully withheld compliance with Section 4(b)(3)(B) of the ESA within the meaning of the APA.  16 U.S.C. §1533(b)(3)(B); 5 U.S.C. §706.

## REQUEST FOR RELIEF

         WHEREFORE, WildEarth Guardians requests that this Court enter judgment providing the following relief:

40.      A declaration that FWS has violated the ESA by failing to make a 12-month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise (*Gopherus agassizii*);

Complaint - Page 13

41.    A declaration that FWS has acted contrary to law and unlawfully withheld and

unreasonably delayed agency action in violation of the APA by failing to make a 12-

month finding on WildEarth Guardians' Petition to list the Sonoran desert tortoise

(*Gopherus agassizii*);

42.    An injunction compelling FWS to make a 12-month finding on WildEarth

Guardians' Petition to list the Sonoran desert tortoise (*Gopherus agassizii*), and to publish

such finding in the Federal Register by a reasonable date certain;

43.    An order awarding WildEarth Guardians' its costs of litigation, including

reasonable attorney's fees; and

44.    Such other and further relief as the court deems just and proper.


Respectfully submitted this 2nd day of February, 2010.


                                        _____/s/_____
                                        Steven Sugarman
                                        1210 Luisa Street – Suite 2
                                        Santa Fe, NM 87505
                                        (505) 672-5082
                                        stevensugarman@hotmail.com


                                        Attorney for Plaintiffs


Complaint - Page 14